THE GALLAGHER LAW GROUP PC
David H. Lawton, Esq. (SBN 275435)
dlawton@thegallagherlawgroup.com
1875 Century Park East, Suite 1550
Los Angeles, CA 90067
Telephone:  (310) 203-2600
Facsimile:  (310) 203-2610

Attorney for Plaintiffs Andre F. Toce, The Toce Firm, APLC, Gilbert H. Dozier, and Anderson & Dozier, LLP

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDRE F. TOCE, an individual, The TOCE FIRM, APLC, GILBERT H. DOZIER an individual, and ANDERSON & DOZIER, LLP,<br><br>Plaintiffs,<br><br>v.<br><br>CAMERON RENTCH, WISE LAW GROUP, LLC, KERRY STEIGERWALT, FORD & ASSOCIATES NATIONWIDE LEGAL SERVICES, APC, and THOMSON REUTERS AMERICA CORPORATION,<br><br>Defendants. | Case No. \_\_\_\_**'17CV0603 AJB  BLM**\_\_\_\_<br><br>PLAINTIFFS' COMPLAINT FOR:<br><br>1. FRAUDULENT CONCEALMENT<br>2. BREACH OF IMPLIED DUTY TO PERFORM WITH REASONABLE CARE<br>3. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING<br>4. BREACH OF CONTRACT<br>5. BREACH OF CONTRACT<br>6. QUANTUM MERUIT |

# I. INTRODUCTION

1. Plaintiffs Andre F. Toce, an individual, The Toce Firm, APLC, Gilbert H. Dozier, an individual, and Anderson & Dozier, LLP (hereinafter collectively referred to as "Plaintiffs") as against Defendants Cameron Rentch, Wise Law Group, LLC, Kerry Steigerwalt, Ford & Associates Nationwide Legal Services, APC, and Thomson Reuters America Corporation.

# II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, et seq., as the matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000.

3. Venue is proper in this Court under 28 U.S.C. § 1391 (b) because at least one of the Defendant's principal places of business is in this district.

# III. PARTIES

4. Plaintiff ANDRE F. TOCE, is an individual licensed to practice law in, citizen of, and domiciled in the State of Louisiana, and principal of Plaintiff, THE TOCE FIRM, APLC.

5. Plaintiff THE TOCE FIRM, APLC, is a law firm registered and doing business in the State of Louisiana (Plaintiff ANDRE F. TOCE and Plaintiff THE TOCE FIRM are collectively referred to herein as "TOCE").

6. Plaintiff GILBERT H. DOZIER, is an individual licensed to practice law in, citizen of, and domiciled in the State of Louisiana, and partner in Plaintiff ANDERSON & DOZIER, LLP.

7. Plaintiff ANDERSON & DOZIER, LLP, is a law firm registered and doing business in the State of Louisiana (Plaintiff GILBERT H. DOZIER and Plaintiff ANDERSON & DOZIER, LLP are collectively referred to herein as "DOZIER").

8. Plaintiffs TOCE and Plaintiffs DOZIER are collectively referred to herein as PLAINTIFFS.

9. Defendant CAMERON RENTCH ("RENTCH") is a citizen of the State of California, domiciled in San Diego County, California.  Prior to 2009, RENTCH was an owner of Defendant WISE LAW GROUP, LLC.

10. Defendant WISE LAW GROUP, LLC ("WLG"), was and is a California limited liability company with its principal place of business in San Diego County, California. During all times relevant herein WLG was an entity in the business of, inter alia, developing websites and marketing to attract victims of mass torts and other serious personal injuries who were seeking legal representation.

11. Defendant KERRY STEIGERWALT ("STEIGERWALT") is a citizen of the State of California, domiciled in San Diego County, California. STEIGERWALT is an attorney licensed to practice law in the State of California under license number 116264.

12. FORD & ASSOCIATES NATIONWIDE LEGAL SERVICES ("FORD") is a professional corporation licensed and qualified to do business in California.

13. Defendants RENTCH, WLG, STEIGERWALT, and FORD are collectively referred to herein as SOLICITORS.

14. Defendant THOMSON REUTERS AMERICA CORPORATION ("TR") is a Delaware corporation, registered and doing business in the State of California, with a business address at 221 Main Street, Suite 1250, San Francisco, CA 94105.

15. SOLICITORS and TR are collectively referred to herein as DEFENDANTS.

## IV. ALLEGATIONS

16. Prior to 2009, STEIGERWALT formed Steigerwalt Nationwide to refer cases from SOLICITORS' websites to leading lawyers and law firms across the country for a 20% referral fee.

17. In or around 2008, STEIGERWALT and Jeffrey Phillips ("Phillips") acquired an interest in WLG for $1.4 million, representing 25% of the $6.5 million case value inventory from fees to be generated by cases referred to Steigerwalt Nationwide.

18. Thereafter, RENTCH negotiated a buyout of Phillips's interest in WLG, with RENTCH giving up his interest in case inventory to Phillips through 2009, but taking 25% interest in case inventory from 2009 forward.

19. After acquiring Phillips's interest in WLG, RENTCH held 67.392% interest in WLG and STEIGERWALT held 32.608% interest in WLG. Additionally, RENTCH ran WLG and took a 25% interest in the case inventory to Steigerwalt Nationwide.

20. Unknown to PLAINTIFFS at the time, in as early as 2011 SOLICITORS were approached to sell WLG to a third-party. However, because STEIGERWALT had his license to practice law in California suspended from October 2012 to October 2013, and in order to close the sale, SOLICITORS and STEIGERWALT manipulated STEIGERWALT's interest to make it appear that he no longer held his 32.608% interest in WLG. STEIGERWALT's interest was transferred, *on paper*, to Defendant FORD.

21. In 2013, during the period that STEIGERWALT was suspended from practicing law, SOLICITORS solicited PLAINTIFFS to accept cases from WLG's inventory.  TOCE had entered into prior agreements with SOLICITORS whereby SOLICITORS were paid, cases were provided, and the agreements

4

concluded successfully with SOLICITORS fulfilling their obligation to provide the full load of cases promised.

22. In July 2013, PLAINTIFFS entered into a written contract with SOLICITORS for a new campaign whereby PLAINTIFFS agreed to pay SOLICITORS One Hundred Thousand Dollars ($100,000.00) and SOLICITORS, through its websites and marketing, agreed to provide PLAINTIFFS with forty (40) transvaginal mesh ("TVM") revision cases ("revisions"), consisting of those with or without the additional need for repair of pelvic organ prolapse ("POP"), but all either needing revision or having the revision already completed; and sixty (60) cases with POP complications which may or may not have needed revisions. ("Campaign Agreement")  The terms of the Campaign Agreement were confirmed in writing by email between RENTCH and TOCE dated July 30, 2013. (*Attached to Complaint as Attachment 1*)

23. PLAINTIFFS paid SOLICITORS One Hundred Thousand Dollars ($100,000.00) in furtherance of and in full performance of PLAINTIFFS obligations under the Campaign Agreement. Thereafter, over a period of time SOLICITORS forwarded to PLAINTIFFS twenty-six (26) POP cases and fourteen (14) revision cases.

24. On or about May 1, 2014 SOLICITORS sold WLG's assets to Thompson Reuters (TR) for $12,500,000 pursuant to an Asset Purchase Agreement.  As part of the sale, unknown to PLAINTIFFS at the time, RENTCH, STEIGERWALT and/or FORD entered into a 5 year non-compete provision with TR.

25. In March 2016 TR informed PLAINTIFFS that it denied assuming the Campaign Agreement in its asset purchase from WLG.

26. SOLICITORS did not deliver the remaining 34 POP cases, nor the remaining 26 revision cases due under the Campaign Agreement, and have not

fully performed under the Campaign Agreement. As a result, DEFENDANTS, and each one of them, breached the Campaign Agreement and PLAINTIFFS have been damaged in an amount to be proven at trial, and calculated by PLAINTIFFS to be in excess of $3,600,000.

## COUNT I
## FRAUDULENT CONCEALMENT
(As against SOLICITORS)

27. PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

28. At the time that SOLICITORS and PLAINTIFFS entered into the Campaign Agreement, SOLICITORS failed to inform PLAINTIFFS that SOLICITORS were negotiating to sell WLG to a third-party, and ultimately to sell to TR.

29. At the time that SOLICITORS and PLAINTIFFS entered into the Campaign Agreement, SOLICITORS failed to inform PLAINTIFFS that STEIGERWALT was suspended from practicing law, that to close the sale to TR, SOLICITORS and STEIGERWALT had manipulated STIGERWALT's interest to make it appear that he no longer held his 32.608% interest in WLG, or that STEIGERWALT's interest was transferred, *on paper*, to Defendant FORD.

30. At the time that SOLICITORS and PLAINTIFFS entered into the Campaign Agreement, SOLICITORS failed to inform PLAINTIFFS that SOLICITORS were not transferring the Campaign Agreement to a purchaser of WLG's assets, or had not disclosed the Campaign Agreement to TR, or that TR had not agreed to accept the obligations of the Campaign Agreement in its asset purchase.

31. At the time that SOLICITORS and PLAINTIFFS entered into the Campaign Agreement, PLAINTIFFS did not know of these facts set forth herein, which were concealed by SOLICITORS.

32. At the time that SOLICITORS and PLAINTIFFS entered into the Campaign Agreement, SOLICITORS intended to deceive PLAINTIFFS by concealing the facts set forth herein.

33. Each concealed fact is material to the Campaign Agreement, affecting PLAINTIFFS' ability to receive the required number and quality of TVM revision cases, and the benefits therefrom, and a substantial factor in causing PLAINTIFFS' harm.

34. Had the concealed facts, or any fact set forth herein, been disclosed to PLAINTIFFS, PLAINTIFFS would not have entered into the Campaign Agreement.

35. As a direct and proximate result of SOLICITORS' concealment, PLAINTIFFS have been economically harmed.

36. SOLICITORS' actions described above were willful, wanton and malicious in that SOLICITORS intended to cause injury to PLAINTIFFS by enticing PLAINTIFFS to enter into the Campaign Agreement while concealing facts which, had they been known to PLAINTIFFS, PLAINTIFFS would not have entered into the Campaign Agreement. Such actions of SOLICITORS were done in willful disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of punitive damages

## COUNT II
## BREACH OF IMPLIED DUTY
## TO PERFORM WITH REASONABLE CARE
(As against DEFENDANTS)

37. PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

38. PLAINTIFFS entered into the Campaign Agreement with SOLICITORS.

39. PLAINTIFFS did all of the significant things required of PLAINTIFFS under the Campaign Agreement as required.

40. DEFENDANTS were required to provide PLAINTIFFS with forty (40) TVM revisions, consisting of those with or without the additional need for repair of POP, but all either needing revision or having the revision already completed; and sixty (60) cases with POP complications which may or may not have needed revisions.

41. DEFENDANTS, or some of them, delivered twenty-six (26) POP cases and fourteen (14) revision cases, but did not deliver the remaining thirty-four (34) POP cases or the remaining twenty-six (26) revision cases due under the Campaign Agreement.

42. At the time that WLG sold its assets to TR, WLG had an obligation to notify TR of the Campaign Agreement, had an obligation to notify PLAINTIFFS of the relevant terms of the Asset and Purchase Agreement between WLG and TR, and had an obligation to transfer the obligations of the Campaign Agreement to TR. TR had a corresponding obligation to conduct due diligence and to assume the obligations of the Campaign Agreement.

43. DEFENDANTS, and each one of them, did not fulfill their obligations owed to PLAINTIFFS, and as a result, while PLAINTIFFS have complied with the terms of the Campaign Agreement, DEFENDANTS' obligations under the Campaign Agreement remain unfulfilled.

44. SOLICITORS failed to use reasonable care when SOLICITORS sold WLG's assets to TR.

45. TR failed to use reasonable care when it purchased WLG's assets from SOLICITORS.

46. As a direct and proximate result of DEFENDANTS' failure to perform with reasonable care, which should have been accorded to PLAINTIFFS

as a result of the Campaign Agreement, PLAINTIFFS have been economically harmed.

## COUNT III
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
(As against SOLICITORS)

47.  PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

48.  PLAINTIFFS entered into the Campaign Agreement with SOLICITORS.

49.  PLAINTIFFS did all of the significant things required of PLAINTIFFS under the Campaign Agreement as required.

50.  All conditions required for PLAINTIFFS' performance have occurred.

51.  SOLICITORS unfairly interfered with the rights of PLAINTIFFS to receive the benefits of the agreements by transferring WLG's assets without fulfilling or transferring the Campaign Agreement.

52.  PLAINTIFFS have been harmed by SOLICITORS' conduct.

## COUNT IV
## BREACH OF CONTRACT
(As against SOLICITORS)

53.  PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

54.  The Campaign Agreement entered into by SOLICTORS and PLAINTIFFS constitutes a binding and enforceable contract.

55.  PLAINTIFFS fully performed all that was required under the Campaign Agreement by making all payments required therein.

56.  SOLICITORS have breached the Campaign Agreement by failing to provide PLAINTIFFS with the agreed forty (40) TVM revisions, consisting of

those with or without the additional need for repair of POP, but all either needing revision or having the revision already completed; and sixty (60) cases with POP complications which may or may not have needed revisions.

57. As a direct and proximate result of SOLICITORS' breach, PLAINTIFFS have been damaged economically.

## COUNT V
## BREACH OF CONTRACT
(As against TR)

58. PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

59. The Campaign Agreement entered into by SOLICTORS and PLAINTIFFS constitutes a binding and enforceable contract.

60. PLAINTIFFS fully performed all that was required under the Campaign Agreement by making all payments required therein.

61. SOLICITORS' obligations under the Campaign Agreement transferred to TR upon TR's purchase of WLG's assets.

62. TR has breached the Campaign Agreement by failing to provide PLAINTIFFS with the agreed forty (40) TVM revisions, consisting of those with or without the additional need for repair of POP, but all either needing revision or having the revision already completed; and sixty (60) cases with POP complications which may or may not have needed revisions.

63. As a direct and proximate result of TR's breach, PLAINTIFFS have been damaged economically.

## COUNT VI
## QUANTUM MERUIT
(As against DEFENDANTS)

64. PLAINTIFFS re-allege and incorporate by reference each and every allegation set forth above in this Complaint as if set forth herein.

65. PLAINTIFFS conferred a benefit upon DEFENDANTS in the form of payment of $100,000.00.

66. PLAINTIFFS did not receive full value in return for conferring that benefit to DEFENDANTS.

67. Allowing DEFENDANTS to obtain the full benefit of the Campaign Agreement, without providing PLAINTIFFS the full value promised in return, would be unjust.

68. PLAINTIFFS are entitled to the fair value of benefits promised them under the Campaign Agreement.

## V.   RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully request that this Court:

A. Award PLAINTIFFS compensatory damages;

B. Award direct, indirect, consequential, general, and special damages according to proof;

C. Award exemplary and punitive damages;

D. Award pre-judgment interest and costs of suit,

E. Award costs of suit and reasonable attorneys' fees;

F. Award any other relief that the Court deems just and proper.

DATED:   March 27, 2017

Respectfully submitted,

By: s/ David H. Lawton           .
     Attorney for Plaintiffs
     dlawton@thegallaghergroup.com