UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE F. TOCE, an individual, THE TOCE FIRM, APLC, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CAMERON RENTCH, WISE LAW GROUP, LLC, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 17-cv-0603-AJB-BLM<br><br>**ORDER DENYING CROSS-DEFENDANTS' MOTION TO DISMISS THOMSON REUTER'S CROSSCLAIM WITHOUT PREJUDICE**<br><br>(Doc. No. 26) |
| THOMSON REUTERS (LEGAL) INC,<br><br>　　　　　　　　　Cross-Complainant,<br><br>v.<br><br>CAMERON RENTCH and WISE LAW GROUP, LLC,<br><br>　　　　　　　　　Cross-Defendants. | |

　　　　Pending before the Court is Cross-Defendants Cameron Rentch and Wise Law Group, LLC's ("WLG") motion to dismiss the crossclaim filed by Thomson Reuters. (Doc. No. 26.) Both Thomson Reuters ("TR") and Plaintiffs Andre F. Toce, The Toce Firm,

1

APLC, Gilbert H. Dozier, and Anderson & Dozier, LLP ("Plaintiffs") filed separate oppositions to the motion. (Doc. Nos. 31, 32.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for determination on the papers and without oral argument. For the reasons explained more fully below, the Court **DENIES WITHOUT PREJUDICE** Cross-Defendants Cameron Rentch and the Wise Law Group's motion to dismiss.

## **BACKGROUND**[1]

A. Complaint

Plaintiffs filed their complaint on March 27, 2017, alleging six causes of action: (1) fraudulent concealment against Defendants Cameron Rentch, WLG, Kerry Steigerwalt, and Ford & Associates Nationwide Legal Services (collectively referred to as "Solicitors")[2]; (2) breach of implied duty to perform with reasonable care against all Defendants[3]; (3) breach of covenant of good faith and fair dealing against Solicitors; (4) breach of contract against Solicitors; (5) breach of contract against TR; and (6) quantum meruit against all Defendants. (*See generally* Doc. No. 1.) The events leading up to the institution of this action are as follows.

Defendant Kerry Steigerwalt and Solicitors prior to 2009 referred cases from Solicitors' websites to leading lawyers and law firms across the country for a 20% referral fee. (Doc. No. 1 ¶ 16.) Steigerwalt is an attorney licensed to practice law in the State of California. (*Id.* ¶ 11.) In or around 2008, Steigerwalt and Jeffrey Phillips acquired an interest in WLG, a California limited liability company that develops websites and marketing to draw interest from victims of mass torts who are seeking legal representation,

---

[1] The following facts are taken from the crossclaim and construed as true for the limited purpose of resolving the motion to dismiss. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).
[2] Defendants Kerry Steigerwalt and Ford & Associates Nationwide Legal Services have been voluntarily dismissed without prejudice by Plaintiffs. (Doc. No. 22.)
[3] The current Defendants include Cameron Rentch, WLG, and TR.

2

for $1.4 million. (*Id*. ¶¶ 10, 17.) Subsequently, Defendant Rentch, the prior owner of WLG, negotiated a buyout of Phillips's interest in WLG, with Rentch giving up his interest in case inventory to Phillips through 2009, but taking 25% interest in case inventory from 2009 going forward. (*Id*. ¶¶ 9, 18.)

In 2011, Solicitors were approached to sell WLG to a third-party. (*Id*. ¶ 20.) However, this sale was complicated by the fact that Steigerwalt's license to practice law in California had been suspended from October 2012 to October 2013. (*Id*.) Nonetheless, in an effort to close the sale, Solicitors and Steigerwalt allegedly manipulated Steigerwalt's interest in WLG to make it appear as if he no longer held his 32.608% interest as it had been transferred on paper to Defendant Ford. (*Id*.)

Thereafter, in 2013, Solicitors petitioned Plaintiffs to accept cases from WLG's inventory. (*Id*. ¶ 21.) Having worked successfully with Solicitors previously, Plaintiffs entered into a written contract with Solicitors in July of 2013—Plaintiffs agreed to pay Solicitors $100,000.00 in exchange for Solicitors providing Plaintiffs with forty transvaginal mesh ("TVM") revision cases, consisting of those with or without the additional need for repair of pelvic organ prolapse ("POP"), but all either needing revision or having the revision already completed; and sixty cases with POP complications which may or may not have needed revisions ("the Campaign Agreement"). (*Id*. ¶ 22.) Plaintiffs contend that they have fully complied with the Campaign Agreement by paying Solicitors the $100,000.00. (*Id*. ¶ 23.) However, as of the date of the complaint, Solicitors have only forwarded to Plaintiffs twenty-six POP cases and fourteen revision cases. (*Id*.)

On or about May 1, 2014, Solicitors sold WLG's assets to TR for $12,500,000.00 pursuant to an Asset Purchase Agreement (the "APA"). (*Id*. ¶ 24.) As part of this sale, unknown to Plaintiffs, Rentch, Steigerwalt, and/or Ford entered into a five year non-compete provision with TR. (*Id*.) In March of 2016, TR informed Plaintiffs that it denied assuming the Campaign Agreement in its APA and thus have not delivered the remaining thirty-four POP cases or the remaining twenty-six revision cases due under the Campaign Agreement. (*Id*. ¶¶ 25, 26.) Consequently, Plaintiffs argue that TR has not fully performed

3

under the Campaign Agreement allegedly damaging Plaintiffs in excess of $3,600,000.00. (*Id*. ¶ 26.) As to the Solicitors, Plaintiffs allege that before entering into the Campaign Agreement, they failed to inform Plaintiffs that Steigerwalt was suspended from practicing law and hid the fact that they had manipulated his interest in WLG. (*Id*. ¶¶ 28–29.) Additionally, Solicitors purportedly did not apprise Plaintiffs that the Campaign Agreement would not be transferred to the purchaser of WLG's assets. (*Id*. ¶ 30.)

B.    TR's Crossclaim

On June 9, 2017, TR filed a crossclaim against Defendants Rentch and WLG ("Cross-Defendants"). (Doc. No. 15.) TR contends that pursuant to the APA, it purchased some, but not all, of the assets of WLG. (*Id*. ¶ 7.) Most notably, as part of the APA, Cross-Defendants were required to disclose all liabilities and contracts that were to be assumed by TR. (*Id*. ¶ 9.) However, Cross-Defendants allegedly failed to disclose the existence of the Campaign Agreement. (*Id*. ¶ 11.) Thus, according to TR, the Campaign Agreement constitutes a "Retained Liability" for purposes of the APA. (*Id*. ¶ 12.) Section 6.10 of the APA provides that "<u>Discharge of Retained Liabilities</u>. Each Seller shall, and the Principal shall cause each Seller to pay, discharge and perform promptly, when due, any and all Retained Liabilities." (*Id*. ¶ 13.)

In sum, under the APA, Cross-Defendants allegedly have the duty to discharge and perform their obligations under the Campaign Agreement, and have a duty to indemnify TR for any claims and/or damages arising from any failure to discharge or perform on the contract. (*Id*. ¶ 16.) TR contends that it submitted a formal request for indemnification on or around May of 2017. (*Id*. ¶ 18.) On June 2, 2017, Cross-Defendants declined TR's request for indemnification claiming that it was untimely. (*Id*. ¶ 19.)

Consequently, TR brings this crossclaim alleging causes of action for (1) breach of contract; and (2) declaratory relief. (*See generally* Doc. No. 15.) TR's prayer for relief requests damages, costs of suit, and a judicial declaration that Cross-Defendants have a duty to indemnify TR for all damages, costs, expenses, and other obligations that may inure

to TR as a result of the underlying action. (*Id.* at 6.)[4]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## DISCUSSION

A.   Judicial Notice

As an initial matter, the Court turns to Cross-Defendants' request for judicial notice of the APA. (Doc. No. 26-1 at 3–4.) Cross-Defendants cite to Federal Rule of Civil

---

[4] Page numbers refer to the CM/ECF page number and not the number listed on the original document.

Procedure 10(c) to support their request.[5] (*Id.*)

Rule 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Presently, TR filed, under seal, the APA as Exhibit A to its crossclaim. (Doc. Nos. 15-1, 24.) Thus, the Agreement is part of the pleading as defined by Rule 10(c) and is incorporated by reference as TR has referred to the document extensively in its crossclaim. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, judicial notice of the document is warranted as neither party opposes the accuracy of the APA. *See* Fed. R. Evid. 201(b).

B.     Cross-Defendants' Motion to Dismiss

On July 3, 2017, Cross-Defendants filed the instant action, their motion to dismiss TR's crossclaim. (Doc. No. 26.) The crux of Cross-Defendants' motion is that any obligation they may have had to indemnify TR extinguished on November 1, 2016. (Doc. No. 26-1 at 2.) TR retorts in opposition that the applicable provisions of the APA demonstrate that it has an indefinite amount of time to seek indemnification. (Doc. No. 31 at 2.) Additionally, Plaintiffs mount that Cross-Defendants' motion to dismiss improperly challenges the intent and breadth of the APA between Solicitors and TR, which is not a proper Rule 12(b)(6) motion. (Doc. No. 32 at 4.) Thus, Cross-Defendants' motion should be denied. (*Id.*)

Presently, the parties' key dispute is whether the APA unambiguously holds that Cross-Defendants have a duty to indemnify TR for any liability and/or damages arising from the underlying action. If an agreement is ambiguous, then interpretation of the agreement becomes a fact issue that cannot be resolved on a motion to dismiss. *See State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299, 1301 (9th Cir. 1985) ("The interpretation of a contract presents a mixed question of law and fact. The existence of an ambiguity must be determined as a matter of law. If an ambiguity exists, a question of fact

---

[5] The Court notes that the proper standard for judicial notice is Federal Rule of Evidence 201.

is presented.") (citations omitted); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (holding that affirmative defenses may not be asserted on a motion to dismiss if they raise disputed issues of fact) (per curiam).

TR seeks indemnity under the "Retained Liabilities" section of the APA that states that ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████ Notably, the "Definitions" section of the APA fails to define the relevant terms and refers to "Schedules" that are not attached to the APA nor TR's crossclaim. (*Id.* at 46–54.) Additionally, ████████████████████████████████████████
██████████████████████████████████████████

Fundamentally, this motion hinges on whether general indemnification is a "covenant," "representation," "agreement," or an "obligation." Under TR's interpretation,

7

the indemnification clause is an "agreement" or "covenant" that subjects TR to no time constraints in claiming indemnity from Cross-Defendants. In contrast, under Cross-Defendants' interpretation, indemnification is an "obligation" that is subject to the eighteen month time constraint. Thus, as the closing date of the APA was May 1, 2014, Cross-Defendants' obligation to indemnify TR expired on November 1, 2016. (Doc. No. 26-1 at 6.)

Unfortunately, no clear distinction is made between the specific terms employed by the APA nor does the APA clearly delineate what constitutes an obligation versus an agreement. The Court notes that Cross-Defendants themselves state that "the critical question for this Court . . . [is whether] the obligation to indemnify TR [is] a covenant that survives indefinitely?" (Doc. No. 41 at 3.) Cross-Defendants then fervently argue that as "Indemnification" is not listed as a covenant that it is automatically an "obligation." (*Id*.) The Court does not find the analysis of the APA to be so simple. Instead, at this juncture, the similarity of the terms—terms that provide vastly different consequences for either party, compels the Court to find that the foregoing interpretations provided by Cross-Defendants and TR are both reasonable and plausible based off of the plain meaning of the contract as provided.

Accordingly, the Court therefore concludes that the APA is ambiguous because the indemnification requirement can be interpreted as either a covenant, agreement, or obligation. *See ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1009 (9th Cir. 2014) (holding that generally, "language will be deemed ambiguous when it is reasonably susceptible to more than one interpretation.") (citation omitted). Thus, the issues produced by Cross-Defendants cannot be resolved on a motion to dismiss. *See Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008) ("While the resolution of contractual claims on a motion to dismiss may be proper if the terms of the contract are unambiguous, a motion to dismiss should not be granted where the contract leaves doubt as to the parties' intent.") (internal quotation marks and citation omitted); *see also FT Travel—New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1090 n.134

(C.D. Cal. 2015) ("Although '[o]n a motion to dismiss, the [c]ourt may resolve issues of contract interpretation when the contract is properly before the court,' 'all ambiguities in the contract [must be resolved] in [p]laintiff's favor.'") (citation omitted); *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1066 (E.D. Cal. 2006) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.") (citation omitted).

## **CONCLUSION**

As explained more fully above, the Court **DENIES** Cross-Defendants' motion to dismiss TR's crossclaim **WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: January 3, 2018

Hon. Anthony J. Battaglia
United States District Judge